IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VICKY ANN SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:13cv507-CSC |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., alleging that she was unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant to 28 U.S.C. § 636(c), the parties have

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

> To make this determination[2] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

...
...

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A.  Introduction.**  Smith was 47 years old at the time of the hearing before the ALJ and has completed high school.  (R. 158, 162).  Her prior work experience includes work as a bakery helper.  (R. 19).   Following the administrative hearing, the ALJ concluded that Smith has severe impairments of "degenerative disc disease and osteoarthritis of the lumbar spine, hypertension, sleep apnea, and obesity."  (R. 15).  The ALJ concluded that Smith was unable to perform her past relevant work.  (R. 19).  Nonetheless, the ALJ concluded that Smith was not disabled because she has the residual functional capacity to perform other work that is available in the national economy.

**B.  The Plaintiff's Claims.**  As stated by the plaintiff, Smith presents two issues for the Court's review.

1. Whether the ALJ's finding of Ms. Smith's residual functional capacity is not based on substantial evidence.

2. Whether the ALJ failed to properly accord weight to the phyisician's (sic) of record.

(Doc. # 14, Pl's Br. at 1).

### IV.  Discussion

This court's ultimate inquiry is whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  However, the court pretermits discussion of the plaintiff's specific arguments because the court concludes that the ALJ erred as a matter of law when

4

he improperly relied on the opinion of the non-examining consultative physician, and he failed to fully develop the record regarding Smith's neck and shoulder impairments.

While a claimant has the burden of proving that she is disabled, an ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

An administrative law judge has a duty to develop a full and fair record. *Kelley v. Heckler,* 761 F.2d 1538 (11th Cir. 1985). The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839-41 (11th Cir. 1992). When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected one opinion or record over another. "In

5

the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).[4] "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson v. Heckler,* 755 F.2d 781, 785 (11th Cir. 1985).

As will be explained, the problem with this case is two-fold. The ALJ improperly gave substantial weight to the opinion of a non-examining physician without discrediting Smith's treating physician and he failed to fully and fairly develop the record concerning the severity of the plaintiff's neck and shoulder impairments.

On March 19, 2010, Smith presented to her treating physician, Dr. George Kiracope, complaining of nasal congestion, chest pain, and back pain. (R. 198). Specifically, she complained that her back pain was "chronic and daily." (*Id.*) Dr. Kiracope noted "tenderness at approximately the L3 to L4 paraspinal area and L4 left spinous process feels prominent." (*Id.*) Dr. Kiracope referred Smith to Southern Bone and Joint for treatment of her back pain. (*Id.*)

On March 26, 2010, Smith presented to Dr. Dungan at Southern Bone and Joint. She reported "radiation into the legs with some tingling." (R. 218). A physical examination revealed the following.

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

> She is probably about 5'4" and maybe weighs about 250 pounds. A lot of this is just central. On exam, reflexes are reduced, by symmetric. She has +2 pulses. She has normal sensory. She has very tight hip muscles and has decreased internal rotation with pain in both hips. External rotation is normal. She has a negative slump and negative straight leg raise. Point pain is just in the back in the L5 distribution.

(*Id.*)

X-rays revealed "[a]dvanced L5-S1 degenerative disc disease. L5-S1 spondylolithesis 1 mm." (R. 217-18). Dr. Dungan diagnosed Smith with "[a]dvanced pain lumbar pain with L5-S1 ddd and lithesis." (*Id.*) On April 12, 2010, Smith returned to Dr. Dungan complaining of severe pain with no relief from medication. (R. 216). Dr. Dungan noted that Smith was "unable to stand upright," and her "mobility is really causing her tremendous pain and inability to stand upright." (*Id.*)

An MRI on April 13, 2010 found "[m]ild central type spinal stenosis L4-L5 due to facet joint hypertrophic change, otherwise negative MRI lumbar spine." (R. 210). On April 26, 2010, Dr. Dungan noted that Smith was having increased back pain. "She has trouble walking throughout the day at work. She is quite kyphotic in her posture at the cervical area and has increased flexion in the lower back." (R. 215). Smith was "unable to lie flat on the table." (*Id.*) Dr. Dungan noted that Smith had "facet hypertrophic at L4-5, bulging disc at L3-4 and 4-5." (*Id.*) Dr. Dungan injected Smith with an epidural. (*Id.*)

On May 10, 2010, Smith reported to Dr. Dungan that the epidural had helped tremendously with the pain. (R. 214). She was still unable to stand for "really prolonged periods of time, as the pain does return in the back area." (*Id.*) Dr. Dungan diagnosed Smith

with deconditioning radiculopathy and recommended another epidural. (*Id.*) However, this time the epidural irritated the nerve and left it raw. (R. 213).

On May 24, 2010, Dr. Dungan suggested that Smith "consider going back to work or just perhaps even losing her job." (*Id.*) Dr. Dungan encouraged Smith to "find a work where she can sit down, as she really cannot stand for any prolonged period of time without increasing pain. She cannot do a lot of bending or stooping that she previously did." (*Id.*) In her treatment notes, Dr. Dungan authorized short term disability for six weeks but opined that

> thereafter I will recommend that she return to work. She should use this time also to find a job that may be more compatible with her physical capabilities, which would be predominantly an alteration of sit and walk. **No lifting**.

(*Id.*) (emphasis added).

Smith returned to Dr. Dungan on July 23, 2010. At that time, Dr. Dungan noted that Smith might qualify for disability but she would probably need a functional capacity evaluation that her insurance would not pay for. (R. 211). Dr. Dungan diagnosed Smith as suffering from "[a]dvanced degenerative disc disease with minimal spinal stenosis and facet arthropathy refractory to two epidurals, time and medication." (*Id.*) Due to a lack of money, Smith did not return to Dr. Dungan.

On March 1, 2011, a chest x-ray revealed "spurs forming along the margins of the thoracic vertebral bodies," and Smith was diagnosed with thoracic spondylosis. (R. 225).

On March 17, 2011, at the request of the Commissioner, Smith underwent a

consultative examination by Dr. Suhail Shafi. (R. 230-234). Dr. Shafi noted that Smith had pain and backache but no degenerative disease. (R. 231). He also noted that Smith "is not in any distress but has some difficulty in standing up and walking around due to her morbid obesity and her decreased range and ease of motion in her lower back." (R. 232). He further opined

> Musculoskeletal: **Gait & Station Abnormal, Inspection/Palpations/Motion Stability (specify joint) Abnormal** The patient has preserved ability to stand up and walk around, but has some distress in doing so. The patient has some difficulty in ambulating, and her gait is rather limping and laboured. The patient has a kyphotic posture in her thorax, and her range of flexion in her lower back is around 45 degrees. The patient has range of flexion in her neck of 20 degrees, with lateral flexion range of 20 degrees bilaterally. Range of motion in her neck passively is severely diminished as above. Shoulder range of motion in her neck is 120 degrees flexion, extension range of 60 degrees bilaterally. Abduction range of 120 degrees bilaterally. Hip flexion range of 60 degrees bilaterally, passively, with knee flexion range bilaterally of 140 degrees bilaterally. Muscle power in her upper and lower extremities is bilaterally 4/5 in a symmetrical manner.

(R. 232).

Dr. Shafi's disability evaluation is as follows.

> - the patient has multiple obstacles to her ability to stand up and walk around and ambulate herself, with the patient's ability to carry out strenuous physical activity decreased by her morbid obesity, *her severely impaired range of motion in her lower back and her neck, as well as moderately decreased range of motion in her shoulders bilaterally*.

(*Id.*) (emphasis added). Dr. Shafi did not complete a physical CE emphasis sheet that

9

requested a statement on Smith's ability to do work related activities, but "refer[red] to dictated notes." (R. 234). Unfortunately, those notes are not a part of the record before this court.

On March 21, 2011, Dr. Robert Heilpern, a non-examining physician, completed a physical residual functional capacity assessment in which he opined that Smith could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in a work day; and stand and walk for at least 2 hours in a work. He also opined that Smith was limited in her upper extremities to push and/or pull. (R. 237). He determined that Smith could occasionally push and pull, and she was limited to occasional overhead reaching bilaterally. (R. 238-39). Finally, Dr. Heilpern gave Dr. Shafi's opinion only "some weight because it was not a treating source." (R. 242). Notably, Dr. Heilpern does not reference or mention Dr. Dungan's treatment records.

> The ALJ concluded that Smith had the residual functional capacity to
>
> perform many elements of a light range of work as defined in 20 CFR 404.1567(b) and 416.967(b). However, the claimant cannot perform a "full range" for light work as described in SSR 83-10. Instead, she is able to sit up to 6 hours in an 8-hour workday, with an opportunity to stand every hour; walk for 15 minutes at a time for a total of 1 hour in an 8-hour workday; and stand for 30-45 minutes at a time for a total of 2 and a half hours in an 8-hour workday. In addition, the claimant is able to perform work that does not involve climbing ladders, ropes, or scaffolds, or crawling. She can also cannot (sic) perform more than occasional bending, crouching, kneeling, or climbing or stairs or ramps; more than occasional pushing/pulling with her lower extremities; more than occasional reaching overhead above shoulder level; or constant to continuous use of her upper extremities.

(R. 15).

In assessing residual functional capacity, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Further, the ALJ is required to accord considerable weight to the opinions of the claimant's treating physicians absent good cause for not doing so. *Id*. at 279-80. In determining Smith's residual functional capacity, the ALJ gave substantial weight to the opinion of Dr. Robert Heilpern, the non-examining physician.

The ALJ's reliance on Dr. Heilpern's opinion was error. The opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir. 1990). *See also Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985). It was error for the ALJ to give substantial weight to the opinion of a non-examining physician who did not see Smith, and only give partial weight to the opinion of the consultative physician who did examine her. The ALJ gave "partial weight" to the opinion of Dr. Shafi because "it is not from a treating source" and the "medical records dated after this consultative examination suggest a greater level of functioning." (R. 17). This too was error. Relying on treatment records from the Newton Family Health Center, the ALJ concluded that Smith is not as limited as Dr. Shafi suggested. (R. 19). Her reliance is misplaced. First, at Newton Family Health Center, Smith was seen by Charles D. Winfrey, a physician's assistant. A physician's assistant is not considered an "acceptable medical source" under the Commissioner's own regulations, and, thus, the ALJ erred in relying on

11

his treatment notes to discredit Dr. Shafi. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). *See also Crawford*, 363 F.3d at 1160. Next, the records are clear that Smith sought treatment from Newton Family Health Center only for her high blood pressure medication. (R. 254-55, 258, 261, 269).

The ALJ continued to err when he failed to assign any weight at all to Smith's treating physician, Dr. Dungan. The law does not necessarily require the ALJ to accept the validity of Dr. Dungan's opinion that Smith can do no lifting and no standing for prolonged periods of time, but it *does* require that, in determining Smith's residual functional capacity and in evaluating the credibility of Smith's allegations of pain, he must consider *all* the relevant evidence in the case record, and he must specifically state "good cause" for rejecting the medical opinions of a treating physician. 20 CFR § 404.1545(a)(1); 20 CFR § 416.929(c)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ cannot simply close his eyes to the relevant portions of Dr. Dungan's treatment records that may detract from his residual functional capacity assessment.

At the very least, the ALJ was required to reconcile the differing opinions concerning Smith's ability to ambulate, lift and use her upper extremities. For example, Dr. Heilpern concluded that Smith could lift 20 pounds occasionally. Dr. Shafi did not offer an opinion about whether Smith could lift but did not "moderately decrease range of motion in her shoulders bilaterally."[5] Dr. Dungan opined that Smith could do no lifting at all. Because the

---

[5] Because Dr. Shafi's dictated notes are not part of the record, it is impossible to know whether Dr. Shafi offered an opinion on the extent of Smith's ability to ambulate, lift or use her upper extremities

ALJ chose to credit the opinion of the non-examining physician over the opinions of Dr. Dungan, Smith's treating physician and Dr. Shafi, the consultative physician, without reconciling the inconsistencies and without offering good cause or acknowledging the greater weight due Dr. Dungan's records in her capacity as treating physician, this case must be remanded for further proceedings.

Additionally, the court concludes that the ALJ failed to develop the record regarding the severity of Smith's neck and shoulder impairments and the effect of those impairments on Smith's ability to perform work. It is undisputed that Dr. Shafi noted that Smith had "a kyphotic posture in her thorax," and decreased range of motion in neck. (R. 232). "Range of motion in her neck passively is severely diminished." (*Id*.) He also noted a "moderately decreased range of motion in her shoulders bilaterally." (*Id*.) Dr. Dungan also noted that Smith was "quite kyphotic in her posture in the cervical area." (R. 215). There is sufficient evidence in the record from which the ALJ should have concluded that it was necessary to secure additional evidence regarding the plaintiff's neck and shoulder impairments before rendering a decision regarding her disability.[6] While the ALJ ordered a physical consultative examination for Smith, he did not require any additional updated x-rays, MRIs, or medical

---

in work related activities. (R. 234).

[6] Of course, even if the ALJ concludes that these conditions that are not severe impairments, he must still consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe - either singularly or in combination - to create a disability. *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's impairments must be considered in combination, even when the impairments considered separately are not severe. *Hudson*, 755 F.2d at 785.

testing to determine the extent of the plaintiff's neck and shoulder impairments.  *See Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988) (ALJ is not required to order consultative examination unless the record establishes that such an evaluation is necessary to make informed decision).  In addition, 20 C.F.R. § 416.917 requires the ALJ to order additional medical tests when the claimant's medical sources do not give sufficient medical evidence to make a determination as to disability.  The ALJ could not make an informed decision based on the record before him and thus, his decision is not supported by substantial evidence.

Because the ALJ relied on conclusory statements of the non-examining consultative physician, failed to articulate specific reasons for rejecting the treating physician's opinion, failed to reconcile the differing medical opinions about Smith's abilities, and failed to secure additional testing to ascertain the extent of Smith's neck and shoulder impairments, the court cannot conclude that the ALJ's determination that Smith has the residual functional ability to perform work is supported by substantial evidence.

"Failure to apply correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal."  *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V. Conclusion

Accordingly, the court concludes that the decision of the Commissioner denying benefits to Smith should be reversed and remanded for further proceedings consistent with this opinion.

Further, it is

**ORDERED** that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). See also *Blitch v. Astrue*, 261 Fed. Appx. 241, 242 n.1 (11th Cir. 2008).

A separate final judgment will be entered.

Done this 15th day of October, 2014.

                                  /s/Charles S. Coody
                                  CHARLES S. COODY
                                  UNITED STATES MAGISTRATE JUDGE